C. H. NORTHRAM, The (LONAN v.). See Case No. 8,473.

CHOAT (RAMBLER v.). See Case No. 11,-542.

## Case No. 2,691.

CHOATE et al. v. CROWNINSHIELD.

[3 Cliff. 184.][1]

Circuit Court, D. Massachusetts. Oct. Term, 1868.

CARRIERS — LIABILITY FOR LOSS OR DAMAGE — PRESUMPTION — BILL OF LADING — REBUTTING PRESUMPTION RAISED BY STATEMENT IN.

1. Common carriers are not responsible for losses or damage which may happen to goods received to be carried, if the same result from the act of the owner.

2. When goods are lost or damaged after their reception by the common carrier and before their delivery, the prima facie presumption is, that the loss was occasioned by the carrier's default.

3. The legal effect of a bill of lading, affirming the goods to have been shipped in good order, is to raise a prima facie presumption that in all particulars open to inspection the goods were in that condition; but this does not preclude the carrier, in case of loss or damage, from showing that the loss proceeded from some cause which existed, but was not apparent, at the time he received the goods.

[Cited in Wolff v. The Vaderland, 18 Fed. 740.]

4. The responsibility of the carrier does not extend to damages resulting to a cargo of cotton in bales, from moisture of the contents of the bales received previous to the time of lading, which could not have been discovered by the master, and where the vessel was in all respects seaworthy, and there appeared to be no want of ordinary care, skill, and energy on the part of the master, to protect the goods against such injury while on board the vessel.

5. While cotton in bales was lying on the wharf, and while a vessel was loading with the same, it was discovered by the accidental opening of one bale that the contents thereof were wet. This fact was reported to the shippers, who said that the wet would do no injury, and the bale was thereupon tied up and placed on board. Held, that there was no evidence in the case to warrant the conclusion that the master had reason to believe any portion of the residue unfit for the voyage.

Appeal from the district court of the United States for the district of Massachusetts.]

In admiralty. Libellants [Daniel L. Choate and others] were the owners of the ship Sciota, and they instituted this suit against the respondent [Francis B. Crowninshield] in

the district court [case unreported] to recover the balance of the freight alleged to be due to them on seven hundred and seventy-two bales of cotton which they transported in that ship from New Orleans to Boston, and there delivered to the respondent, as the consignee of the goods. The description of the goods and the terms of the shipment, as expressed in the bill of lading, were in substance and effect as follows: "Shipped in good order, seven hundred and seventy-two bales of cotton under deck, being marked and numbered as in margin, to be delivered in the like good order and condition at the port of Boston, the dangers of the seas only excepted, unto the respondent, the consignee or assigns, he or they paying freight for the goods five eighths of one cent per pound, with five per cent primage, average accustomed." Four bills of lading of that import were signed by the master, and the ship with the goods on board, on the 8th or 10th of February, 1859, sailed from the port of New Orleans, where the master received the goods specified in the bill of lading. The allegations of the libel were, that the ship arrived at the port of destination on the 22d of March in the same year, and that the master then and there made a true delivery of all the goods described in the bill of lading, to the agents of the respondents, according to its tenor and effect. The admission of the answer also was, that the whole number of bales were delivered; but the respondent denied that they were all delivered in good order and condition, as alleged in the libel. On the contrary, he alleged that the contents of some of the bales were partially lost, and that the contents of some others were wet, and otherwise damaged, and that the coverings also had been wet and greatly damaged. The true amount of the freight was $2,407; and the libellants admit that the respondent paid the sum of $1,800 at the time the freight became due; $607.10 remained due to the libellants, if, as they alleged, the master made true delivery of the goods, as he stipulated to do in the bill of lading. The respondent denied that the master did so, and alleged that he suffered damage in consequence of the failure of the master to deliver the goods in like good order and condition as he received them on board, to the amount of $500, which he claims to recoup out of the sum which would otherwise be due to the libellants, as the unpaid balance of the freight.

Sohier & Welch, for libellants.

Lothrop & Bishop, for respondent.

CLIFFORD, Circuit Justice. Exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction is conferred upon the district courts by the ninth section of the judiciary act; but the first section of the act of the 3d of March, 1821, provides that in all suits and actions in any district court in which it shall appear that

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

the judge of such court has been of counsel for either party, said suit or action may be certified to the next circuit court of the district. 1 Stat. 76; 3 Stat. 643.

Jurisdiction of the suit in this case is derived from that provision, the same having been duly certified into this court because the district judge had been of counsel to one of the parties. The obligations of a common carrier by water, who receives goods to transport from port to port, are to keep the goods safely, duly transport them, and make right delivery of the same at the port of destination. The Eddy, 5 Wall. [72 U. S.] 481; The Bird of Paradise, Id. 545; McAndrews v. Thatcher, 3 Wall. [70 U. S.] 369. Common carriers are responsible for all losses and damages which may happen to goods received to be carried, except such as result from the act of God or the public enemy, or from the act or default of the owner himself, unless such liability is limited or restrained by the terms of the contract under which the goods were received. Niagara v. Cordes, 21 How. [62 U. S.] 26; Hastings v. Pepper, 11 Pick. 42.

Dangers of the seas are excepted in the bill of lading in this case, but there is no other material limitation to the contract of affreightment. When goods in the custody of a common carrier are lost or damaged after their reception and before their delivery, the prima facie presumption is, that the loss or injury was occasioned by the default of the carrier, and the burden is upon him to prove that it arose from a cause for which he is not responsible. Nelson v. Woodruff, 1 Black [66 U. S.] 156; Clarke v. Barnwell, 12 How. [53 U. S.] 280.

Such a presumption, however, is nothing more than a prima facie presumption, and it may be overcome by any proper testimony which is sufficient to show that the fact was otherwise. The legal effect of a bill of lading such as was given in this case, affirming that the goods were shipped in good order and condition, is also to raise a prima facie presumption that, as to all circumstances which were visible and open to inspection, the goods were in that condition, but it does not preclude the carrier from showing, if he can, in a case of loss or damage, that the loss or damage proceeded from some cause which existed but was not apparent at the time he received the goods, and which, if satisfactorily proved, will discharge him from liability. Clarke v. Barnwell, 12 How. [53 U. S.] 280.

Between the shipper and the ship-owner the bill of lading is not conclusive as against proof of latent defects, even in a case where the bill of lading states that the goods were shipped in good order and condition. Ellis v. Willard, 5 Seld. [9 N. Y.] 530; Shepherd v. Naylor, 5 Gray, 592; Barrett v. Rogers, 7 Mass. 297; Haddow v. Parry, 3 Taunt. 303; Macl. Shipp. 339; Bates v. Todd, 1 Moody & R. 106; Sears v. Wingate, 3 Allen, 103; 1 Pars. Mar. Law, 37; Berkley v. Watling,

7 Adol. & El. 29; O'Brien v. Gilchrist, 34 Me. 554.

Applying these principles of law to the case, it is quite clear that the decision must turn upon the questions of fact which may be determined without any extended argument, as there is not much real conflict in the testimony, except as to a single point. The seaworthiness of the ship is not controverted, and the proofs show that she was staunch and strong, and that she was well manned and equipped. Due care was used in taking the cargo on board, and the goods of the respondent were well stowed and dunnaged.

The testimony of the master is, that there were two iron ventilators in the ship, one forward, and one aft, and that the hatches were left open till they left the bar, near the mouth of the river. The usual length of a voyage from New Orleans, as shown in the testimony, is eighteen or twenty days, but the ship in this case was detained twenty days inside the bar. During that period, the evidence is, there was little or no motion in the vessel, and that the weather was hot, sultry, and disagreeable, and that there were light showers with heavy fogs. Want of motion in the vessel doubtless rendered the circulation between decks and in the hold less than it would have been if the vessel had been under way. Proper care appears to have been taken of the goods from the time they were delivered on the wharf until they were stowed in the ship, and the proofs show that none of the bales remained on the wharf more than four days before they were shipped. The outside appearance of the bales was "ordinarily good," and nothing except a single circumstance occurred during the loading of the ship to awaken any suspicion that the contents of the bales were in any respect unfit for transportation in such a voyage. When about two thirds of the consignment had been loaded and stowed, the master discovered a man attempting to steal cotton from one of the bales on the wharf, but he escaped before he could be apprehended. He had cut the bagging so that the contents were exposed, and on examining the cotton the master found that it was wet, and immediately reported the fact to the shippers.

The statement of the master is, that when he reported the fact to the shippers, they told him that the wet would not injure it, as it was bound coastwise, and he immediately tied up the broken bale, and it was taken on board. Other than that circumstance, there does not appear that anything occurred, or that there was anything in the outside appearance of the bales calculated to create suspicion that the goods were not in a proper condition for the voyage.

Two propositions are submitted by the respondent in respect to that evidence: 1. He insists that it does not sufficiently appear that the bale cut open was one that belonged to his consignment. 2. But if it

did, then it shows that the defect in the goods, if it existed at that time, was not latent.

Neither of the propositions, however, can be sustained to an extent to benefit the respondent. The better opinion from all the evidence is, that the broken bale was one which belonged to his consignment, and there is no evidence to warrant the conclusion that the master had any reason to believe that any portion of the residue was unfit for the voyage, especially as he was assured to the contrary by the shippers. The theory of the libellants is, that the bales had been exposed to rain, either on the plantation where the cotton was grown and put in bales, or on the way down the river, or on the levee before it was delivered to the master, or that it was injured by the humidity of the atmosphere and dampness of the ship's hold, where most of the respondent's consignment was stowed. The responsibility of the carrier does not extend to damage resulting from such causes, if it appear that the vessel was in all respects seaworthy, and that there was no want of ordinary skill and vigilance and energy on the part of the master to protect the goods against such injury. Clarke v. Barnwell, 12 How. [53 U. S.] 282; Abb. Shipp. 42; Lamb v. Parkman [Case No. 8,020]; 1 Pars. Merc. Law, 136, note 1.

Examined in view of the testimony that much of the top tier between decks appeared as if wet from steam and sweat, and that the bagging and bands were mouldy, and that the bagging was much decayed, it seems almost an irresistible conclusion that the cotton must have received the damage from a combination of both the causes suggested by the libellants, as the testimony negatives every theory suggested by the respondent. Twenty or thirty bales were slightly wet by sea-water, but the same witnesses who state the fact affirm that it was hardly sufficient to deserve notice. The plain inference from the evidence is, that the bales, before they were delivered to the master, had been exposed to the rain, so that the cotton within the bales was damp. Cotton in that condition when stowed, either in the hold or between decks, will soon create heat, and the moisture under the influence of the heat will generate steam and produce all the results shown in this case.

When the ship in the course of her voyage passed into cold weather, those in charge of her noticed that steam was escaping from the ventilators of the vessel, which is strong evidence in support of the libellants' theory. Weighed in any just view of the evidence, there does not appear to be any good reason to question the credibility of the master, or those associated with him in the charge of the vessel; and it is clear that the libellants are entitled to recover, unless the statements of those witnesses can be overcome. The actual delivery of all the bales is conceded, and the testimony shows that they were accepted by the respondent and sent to certain cotton-mills and appropriated to the use for which the cotton was designed. Nothing appears in the case to show how much the cotton in the broken bale was injured, beyond what is shown in respect to it at the place of loading.

Another theory of the respondent is, that the cotton in other bales belonging to other consignments was wet, and that the damage to their cotton was occasioned in that way, but it is sufficient answer to that proposition to say that it is not satisfactorily supported by the evidence. The amount not being a matter of dispute, it does not seem necessary to send the case to an assessor. Decree for the libellants.